UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MATTHEW D. CONNER,

        Plaintiff,

        v.                                                  Case No. 24-C-1428

ANUCIA MARTIN, et al.,

        Defendants.

---

## ORDER SCREENING AMENDED COMPLAINT

---

Plaintiff Matthew D. Conner, who is currently serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. Dkt. No. 1. On February 6, 2025, the Court screened and dismissed the original complaint because Plaintiff's Fifth, Sixth, and Fourteenth Amendment claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and because Plaintiff did not allege enough facts to state a First Amendment retaliation claim or an Eighth Amendment conditions-of-confinement claim. Dkt. No. 9. The Court gave Plaintiff 30 days to file an amended complaint to attempt to cure the deficiencies identified in the screening order. *Id*. On February 26, 2025, Plaintiff filed an amended complaint. Dkt. No. 10. The Court will screen the amended complaint as required by 28 U.S.C. § 1915A.

### ALLEGATIONS OF THE AMENDED COMPLAINT

At the relevant time, between November 29, 2023, and December 6, 2023, Plaintiff was a resident in the Attic Dwight Halfway House. Dkt. No. 10 at 3-10. Defendants are Attic Dwight

Program Supervisor Anucia Martin, Probation Officer (PO) Laparish Smith, PO Supervisor Craig Posselt, and Attic Dwight Staff Member Jeanette Burkum. *Id*.

On November 29, 2023, Plaintiff transferred from Department of Corrections (DOC) custody to the Attic Dwight Halfway House in Madison, Wisconsin. *Id*. at 3. Upon arrival, Plaintiff immediately asked for "passes" for the up-coming holidays. *Id*. Plaintiff explains that residents can get passes to leave the facility for a certain number of hours or for the entire weekend. *Id*. Program Supervisor Martin approved eight hours for Christmas but stated that Plaintiff would not get any other privileges. *Id*. at 3-4. She stated, "I don't trust you going back to Milwaukee," and worried that he might "abuse them." *Id*. at 4. Plaintiff reached out to PO Smith about receiving additional passes for the holidays, but PO Smith did not help either. *Id*. The following day, Plaintiff filed a "complaint" against Program Supervisor Martin and PO Smith. *Id*.

On December 2, 2023, white residents at the Attic Dwight Halfway House taunted Plaintiff in the kitchen by hanging a white doll by its neck from a noose. *Id*. Plaintiff told PO Smith and Staff Member Burkum about the incident, and they both told him to "just ignore them" and focus on himself. *Id*. at 4-5.

On December 4, 2023, Plaintiff saw other (white) residents getting passes to go to the local laundry mat because the laundry machine at the facility was broken. *Id*. at 5. Plaintiff asked for a pass to go to the local laundry mat as well, but Staff Member Burkum denied his request and stated, "[H]onestly, I don't trust you out there unsupervised. You're going to have to wait until the laundry facility here is fixed." *Id*. Plaintiff complained about the situation to Program Supervisor Martin, but she agreed with Staff Member Burkum. *Id*. Plaintiff remained in "dirty clothes" for the next two days. *Id*. Plaintiff then filed a "complaint" against Staff Member Burkum and Program Supervisor Martin. *Id*.

2

The next day, on December 5, 2023, Plaintiff saw other residents getting picked up to go to church. *Id*. at 6. Plaintiff googled "nearby churches" then asked for a church pass, but Program Supervisor Martin denied the request, claiming that Plaintiff had to first get an appointment with the church's Pastor before she would approve a pass. *Id*. Plaintiff filed a "complaint" against Program Supervisor Martin in connection with this incident as well. *Id*.

On December 6, 2023, Plaintiff spoke on the phone with King Rick of the Black Panthers of Milwaukee. *Id*. at 7. Plaintiff complained about the unfair treatment at the halfway house, and King Rick told him to "establish a paper trail" then "go up the chain of command" to "figure out who is the director of Attic." *Id*. Near the end of the phone call, Staff Member Burkum saw Plaintiff talking on the phone and said, "no phones in the facility." *Id*. Plaintiff explained that he was talking to King Rick, a very important person in the Black Panthers of Milwaukee, and asked for information on who was in charge of the halfway house. *Id*. at 7-8. Staff Member Burkum said that she would not give that information and directed Plaintiff to leave the main office. *Id*. at 8. About 30 minutes later, the local police arrived, arrested Plaintiff based on numerous allegations (including threatening staff and attempting to gain personal information about staff on behalf of a gang), and took him to the Dane County Jail. *Id*. at 8-9. Plaintiff states that eight out of the nine allegations made to the police were found to be "false" or "unsubstantiated" by the police, but the allegation of threatening the safety of staff members and attempting to gain personal information about staff on behalf of a gang was credible and warranted taking him into custody. *Id*. at 9. Plaintiff was then moved back to DOC custody at the Milwaukee Secure Detention Faculty (MSDF). *Id*.

Later, PO Smith went to the MSDF to talk to Plaintiff. *Id*. Plaintiff told him that Staff Member Burkum and Program Supervisor Martin "were lying" about his involvement with a gang

3

while at Attic Dwight and that "this was just retaliation for me filing complaints." *Id*. Plaintiff told PO Smith to check his call log, phone history, and camera footage at the halfway house. *Id*. PO Smith responded, "I am not an investigator" and "my job is to do what my supervisor tells me and right now that is proceed with revocation." *Id*. at 9-10. Plaintiff's extended supervision was revoked based on Staff Member Burkum and Program Supervisor Martin's allegedly retaliatory lies. *Id*. at 10. For relief, Plaintiff seeks monetary damages. *Id*. at 12.

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Plaintiff again asks to proceed on a First Amendment retaliation claim and an Eighth Amendment conditions of confinement claim. Dkt. No. 10 at 10. He also mentions a claim for "equality"—presumably racial discrimination—under the Fourteenth Amendment. *Id*.

In connection with the First Amendment retaliation claim, Plaintiff alleges that Staff Member Burkum and Program Supervisor Martin told "lies" about his communication and/or involvement with a gang while at Attic Dwight "in retaliation" for grievances he filed about them. Plaintiff alleges that his extended supervision was revoked based on the allegedly retaliatory lies. But, as explained in the prior screening order, a prisoner cannot bring a §1983 claim that "necessarily impl[ies] the invalidity of [a] conviction or sentence" until he can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a

federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). This includes federal claims that would overturn a parole revocation. *See Easterling v. Siarnicki*, 435 F. App'x 524, 526 (7th Cir. 2011) ("*Heck* applies to both a prisoner's original sentence and to reimprisonment upon revocation of parole" (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005))).

If Plaintiff were to prevail on a retaliation claim that Staff Member Burkum and Program Supervisor Martin told "lies" about his communication and/or involvement with a gang while at Attic Dwight "in retaliation" for grievances he filed about them, it would necessarily undermine his parole revocation. Indeed, Plaintiff alleges that the retaliatory lies were the sole basis for the revocation and that the other allegations made to the police were found to be false and/or unsubstantiated by the police and never raised in his revocation proceedings.

Plaintiff's allegation that eight allegations made to the police that were deemed "false" or "unsubstantiated" by the police does not change the result. *See Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) ("It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury."). The First Amendment requires "but for" causation, which means that Plaintiff must prove that the adverse consequence (arrest and revocation) would not have occurred absent retaliatory animus. *Id*. at 399. If the adverse consequence "would have been taken anyway," there is no retaliation claim. *Id*. Here, even if Defendants had a retaliatory motive in connection with the eight other "false" or "unsubstantiated" allegations, Plaintiff still would have still suffered the adverse consequence of arrest and revocation because it was found that he *did* have communication and/or involvement with a gang while at Attic Dwight.

5

Because it is clear from the amended complaint that Plaintiff is still serving time on his parole revocation, the parole revocation has not been reversed, expunged, declared invalid, or called into question by a court with authority to do so. Therefore, Plaintiff's First Amendment retaliation claim against Staff Member Burkum and Program Supervisor Martin is *Heck* barred and he cannot proceed with it through this lawsuit. Additionally, PO Smith and PO Supervisor Posselt are entitled to absolute immunity in connection with their decisions to pursue revocation charges against Plaintiff. *See Mays v. Johnson*, 850 F. App'x 981, 983 (7th Cir. 2021) ("With regard to [Defendant's] actions to initiate revocation proceedings, she is entitled to absolute immunity."). Therefore, Plaintiff does not have a retaliation claim against PO Smith or PO Supervisor Posselt either.

With respect to his Eighth Amendment claim, Plaintiff alleges that, for two days, he had to wear "dirty clothes" that had not been washed because Staff Member Burkum and Program Supervisor Martin did not allow him to go to the local laundry mat after the laundry machine at the facility broke. However, Plaintiff is not entitled to the services and amenities of a good hotel while at a halfway house; and his wearing of unwashed clothes for two days comes nowhere close to denial of the "minimal civilized measure of life's necessities" required to trigger a constitutional claim. *See Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (noting that "inmates cannot expect the amenities, conveniences, and services of a good hotel" from the "society they once abused"); *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (holding that an Eighth Amendment requires conditions "so adverse" that they deprive an inmate "of the minimal civilized measure of life's necessities"). Indeed, non-incarcerated individuals who do not have a washing machine in their homes, or whose washing machines may be broken and are awaiting repair, often have to go several days without washing their clothes. These are the ordinary circumstances of

life and do not deny an individual of the "minimal civilized measure of life's necessities." Plaintiff therefore fails to state an Eighth Amendment conditions of confinement claim.

Finally, Plaintiff alleges that Staff Member Burkum and Program Supervisor Martin denied him a laundry pass on December 4, 2023, while white inmates were granted a laundry pass. But the Fourteenth Amendment's equal protection clause only protects "invidious discrimination." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019). To state a claim, Plaintiff must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor . . . ." *Id.* at 719-20. In this case, the fact that white residents who had been at the halfway house for longer than Plaintiff received a privilege that Plaintiff did not receive does not, on its own, show invidious discrimination. Toward that end, Plaintiff alleges that Staff Member Burkum and Program Supervisor Martin denied him a laundry pass because they stated that they did not trust him unsupervised in the community and he alleges no other facts about what they said or did from which the Court can reasonably infer that their stated reason was a pretext for racial discrimination. Therefore, Plaintiff fails to state a Fourteenth Amendment equal protection claim as well.

For these reasons, this action is **DISMISSED** because it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and otherwise fails to state a claim upon which relief can be granted. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 23rd day of April, 2025.

_____
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.